IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ISAIAS CASTANEDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 15-cv-1414-SMY |
| | ) | |
| ILLINOIS DEPT. | ) | |
| OF CORRECTIONS,[1] | ) | |
| WEXFORD MEDICAL | ) | |
| SERVICES, | ) | |
| NURSE HARDING, | ) | |
| WARDEN HODGES, | ) | |
| STORM LAWRENCE, and | ) | |
| NURSE PILLIPPE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Isaias Castaneda is currently incarcerated at Lawrence Correctional Center ("Lawrence"). Plaintiff brings this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 against several Lawrence employees, as well as the prison's corporate medical provider. (Doc. 1 at 1-2.) Plaintiff seeks monetary and specific relief. (*Id.* at 9.)

This matter is now before the Court for a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

---

[1] Plaintiff does not name the Illinois Department of Corrections ("IDOC") as a defendant in his Complaint. Therefore, the Clerk is **DIRECTED** to **REMOVE** IDOC as a Defendant in this case.

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A. Portions of this action are subject to summary dismissal.

## Background

The Complaint asserts the following facts. In March 2013, Plaintiff was seen by Nurse Harding due to an unspecified medical issue for which Harding prescribed a medication for Plaintiff's use. After using the medication during the months of March and April, Plaintiff developed a fever and experienced constant pain in his abdomen. He also began vomiting. Eventually, he began to suffer from hives and became jaundiced, at which point he went to sick call. He was ultimately sent back to his housing unit.[2] Upon returning to his cell, he began to experience immense pain. After about a week (in which he says he felt like he was going to die), he was sent back to the health care unit.

While in the health care unit's waiting room, Plaintiff fainted. He was then admitted to the health care unit.[3] His condition worsened, however. On May 6, 2013, he was transferred to the nearby hospital and, from there, to a hospital in Champaign, Illinois. In Champaign, the attending physician determined that Plaintiff suffered from a severe infection and allergic reaction to his medication and concluded that his gall bladder had to be immediately removed. Plaintiff was then transferred to a hospital in Springfield, Illinois where his gall bladder was surgically removed. The attending physician at the Springfield hospital concluded that Plaintiff suffered from Stevens-Johnson Syndrome as a result of the presence of sulfa in the medication Harding had prescribed back in March.

---

[2] There is no indication as to who treated him or in what manner he was treated.
[3] Again, there is no indication as to who treated him, or what treatment he received.

Plaintiff continued to suffer from stomach pain upon returning to Lawrence, and alleges that he also suffered internal bleeding. He again visited Lawrence's health care unit where he was told he had developed a hernia.

In December 2013, Plaintiff spoke to Warden Hodges and Assistant Warden Lawrence, informing them that he was in constant pain and required treatment. Hodges and Lawrence allegedly told Plaintiff they would help him, but they in fact did nothing. Plaintiff also sent a letter to the Director of IDOC.[4]

In January 2014, Plaintiff was seen by Nurse Phillippe at the health care unit due to a prostate issue.[5] Phillippe prescribed a medication from which Plaintiff again suffered adverse reactions. He informed Nurses Wood[6] and Harding that he was suffering from an adverse reaction to the medicine and asked them whether the medication he had been prescribed contained sulfa, which he was allergic to. Apparently, the medication did contain sulfa, but Harding nevertheless did nothing to attempt to alleviate Plaintiff's pain.

Plaintiff claims that his needs have been ignored by the prison and IDOC. He states that he suffers from continuous pain and requires surgery due to his hernia. He seeks monetary and specific relief.

## Discussion

Plaintiff's allegations arise under the Eighth Amendment. The Eighth Amendment protects prisoners from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see*

---

[4] The complaint does not indicate whether the Director responded.
[5] Plaintiff states he saw Phillippe "again," but the complaint does not indicate that he saw her at any prior time.
[6] Wood is referenced in the body of the complaint, but not in the complaint's caption or "Jurisdiction" section. Therefore, the Court does not consider Wood to be a party to this action.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To state an Eighth Amendment claim for deficient medical care, prisoners must establish that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

Here, the Complaint alleges an objectively serious medical condition. Plaintiff asserts he has experienced severe and persistent pain for over two years, suffers from a hernia and that two physicians have recognized he suffered adverse reactions to a medication which necessitated the removal of his gallbladder. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" indicates the presence of a serious medical condition.) (internal quotation marks and citations omitted). Whether Plaintiff has stated a valid Eighth Amendment claim, therefore, turns on whether he has alleged facts indicating the Defendants acted with deliberate indifference to his health or safety.

Prison officials act with deliberate indifference when they "realize[] that a substantial risk of serious harm to a prisoner exists, but then disregard[] that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal quotation marks and citations omitted). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Further, a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's allegations against Harding, Hodges, and Lawrence survive preliminary screening. According to those allegations, the medication Nurse Harding prescribed Plaintiff resulted in a significant amount of pain and suffering, necessitated the removal of Plaintiff's gallbladder and resulted in the development of his hernia. If, as Plaintiff alleges, Harding was informed by Plaintiff that he would suffer adverse consequences if again given a medication that contained sulfa, then Harding's alleged failure to intervene constitutes a valid claim for relief under the Eighth Amendment at this time. So too does the Complaint state a claim against Harding and Hodges in that it alleges Plaintiff informed the two officials that he required medical attention for his hernia and adverse reactions to the medication prescribed by Phillippe, and yet they failed to intervene in any way.

Plaintiff may not, however, proceed against Phillippe. Plaintiff does not claim that Phillippe was apprised of Plaintiff's condition or allergy to sulfa prior to prescribing Plaintiff the second medication. As such, there is no evidence that she was aware the medication she prescribed Plaintiff could cause him substantial harm. Accordingly, any claim against Phillippe is dismissed without prejudice.

Plaintiff's claim against Wexford Medical Services, the health care defendants' corporate employer, also fails to survive preliminary screening. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff]

must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Plaintiff has not alleged any concrete policy or custom attributable to Wexford. Nor has he claimed that any act by Wexford led to his suffering. *See Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir. 2012) (allegation that Wexford had a policy of "denying prison inmates adequate medical care" insufficient, as it did not "identify any concrete policy, let alone an unconstitutional one"). Accordingly, Plaintiff's claim against Wexford must be dismissed without prejudice.

### Pending Motions

The same day he filed his complaint, Plaintiff filed a motion for recruitment of counsel (Doc. 3) and a motion for service of process at government expense (Doc. 4). The Court will first discuss Plaintiff's motion for counsel. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to appoint counsel, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. From a legal standpoint, the litigation of any

constitutional claim falls in the complex range. Even so, Plaintiff's petition sufficiently articulates his claims, and based on this ability, this Court concludes that he appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, Plaintiff's motion for appointment of counsel will be **DENIED** without prejudice. Plaintiff may choose to re-file this motion at a later stage in the litigation.

Plaintiff's motion for service of process at government expense is **GRANTED**. Waivers of service of summons will be issued and served on Defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed against Defendants **HARDING**, **HODGES**, and **LAWRENCE** on his Eighth Amendment claims.

Any claims against Defendants **PHILLIPPE** and **WEXFORD** are **DISMISSED** without prejudice, and Defendants **PHILLIPPE** and **WEXFORD** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **HARDING**, **HODGES**, and **LAWRENCE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of

Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **PHILIP M. FRAZIER** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **PHILIP M. FRAZIER** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A). Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  January 25, 2016

*s/ STACI M. YANDLE*
Staci M. Yandle
United States District Judge