IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISAIAS CASTANEDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-1414-SMY-RJD |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Elaine Burcham's[1] Motion for Summary Judgment (Doc. 40). In his Complaint, Plaintiff Isaias Castaneda alleges that Burcham and other prison employees at Lawrence Correctional Center were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Specifically, Castaneda asserts that he has been provided inadequate treatment for a hernia and that he has had severe allergic reactions to prescribed medication. Burcham now seeks summary judgment on the basis that Castaneda failed to exhaust administrative remedies before filing suit. For the following reasons, the motion is **DENIED**.

### Background

The following facts are gleaned from the Complaint and Castaneda's response to Burcham's motion for summary judgment (*See* Docs. 1 and 46). In March of 2013, Castaneda received a prescription from the Lawrence Health Care Unit for the antibiotic Bactrim. Castaneda began to experience an allergic reaction to the medication and on May 6, 2013, was transported to an outside hospital for treatment. He was initially taken to the Lawrence County

---

[1] Plaintiff identifies the defendant in his complaint as a "Nurse Harding" (later changed on the docket sheet to Nurse Hardy) but the motion for summary judgment states that her correct name is Elaine Burcham.

hospital, but due to the severity of his condition, he was later transported to Carle Clinic in Champaign, Illinois and then to Memorial Medical Center in Springfield, Illinois on May 10, 2013. Medical records note that Castaneda had a red rash "from head to toe" and other assorted medical problems including gastrointestinal bleeding (Doc. 46-1, p. 1). The medical examinations also revealed a small hiatal hernia (Doc. 46-1, p. 3). He was discharged from the hospital on May 22, 2013 after his condition stabilized and his gallbladder was removed. *Id*.

Castaneda maintains that his condition deteriorated because he has an allergy to "sulfa" type medications such as Bactrim. Additionally, Castaneda alleges that he continues to suffer from medical problems related to his hernia and that in January of 2014, he was prescribed Flomax, another sulfa type medication. Medical records indicate that the prescription was issued on January 13, 2014, but was terminated on January 30, 2014 (Doc. 46-1, p. 13). Castaneda then filed this lawsuit on December 28, 2015 (Doc. 1).

## Discussion

The Prison Litigation Reform Act requires prisoners to exhaust available administrative remedies before filing conditions of confinement lawsuits in federal court 42 U.S.C. § 1997e. The Seventh Circuit takes a "strict compliance" approach to the exhaustion issue, requiring prisoners to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Supreme Court has recognized that proper exhaustion puts prisons on notice of inmate concerns, allows for the correction or mitigation of inmate problems that may satisfy the inmate without resorting to litigation and develops a factual record that may be useful if litigation does arise. *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002).

However, under some circumstances the administrative remedies process may be "unavailable" to prisoners, so that the lack of exhaustion will be excused. For example, the administrative remedies process may be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016). The administrative remedies process may also be deemed unavailable if prison officials fail to respond to properly filed grievances. *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006).

As a prisoner within the Illinois Department of Corrections ("IDOC") prison system, Castaneda must utilize the IDOC grievance process. IDOC regulations set forth a three step grievance process for general prison grievances (i.e., non-emergency grievances and grievances not subject to direct ARB review pursuant to Ill. Admin. Code tit. 20, § 504.870). First, the prisoner must attempt to resolve the issue informally with his counselor. Ill. Admin. Code tit. 20, § 504.810(a). After receiving the counselor's response, the prisoner may proceed to step two by filing a written grievance with the institution's grievance officer. *Id*. The grievance officer will then "consider the grievance and report his or her findings and recommendations in writing to the [warden]." Ill. Admin. Code tit. 20, § 504.830(d). The warden will review the grievance officer's recommendation and issue a decision in writing to the prisoner. *Id*. If the prisoner is dissatisfied with the warden's decision he may appeal the grievance to the IDOC Administrative Review Board ("ARB") in Springfield. Ill. Admin. Code tit. 20, § 504.850(a). This is the third and final step. The grievance process is completed when the ARB issues a decision.

Upon review of the grievances submitted, the Court finds that Castaneda properly completed the IDOC grievance process. On July 28, 2013, Castaneda submitted a grievance stating that he is dissatisfied with the level of healthcare received at Lawrence. He also described

3

his trip to the outside hospitals that occurred in May of that year and he mentioned that he is having problems with his hernia (Doc. 41-1, pp. 13-14). Castaneda's counselor received the grievance on September 3, 2013 and provided a response on January 1, 2014. *Id*. The Lawrence grievance office received the grievance on January 9, 2014 and the Lawrence Warden issued a decision in late May of 2014 (Doc. 41-1, p. 12). Castaneda submitted the grievance to the ARB on June 16, 2014 (Doc. 41-1, p. 11). The ARB then issued a final decision on September 26, 2014. *Id*.

Castaneda submitted another grievance pertaining to his medical care on February 6, 2014, again complaining that he is not receiving proper medical treatment in the Lawrence Healthcare Unit. He also states that he was prescribed Flomax in January of 2014 and that the nurses in the Healthcare Unit told him he was not allergic to the medication when in fact he was (Doc. 41-2, pp. 6-7). Castaneda submitted the grievance to his counselor on February 27, 2014 and his counselor responded on August 12, 2014. *Id*. On August 21, 2014, Castaneda submitted the grievance to the Lawrence grievance office and on December 23, 2014, the Lawrence Warden provided a response (Doc. 41-2, p. 8). On January 7, 2015, the ARB received Castaneda's appeal and the ARB issued a decision on January 21, 2015, stating that "This office previously addressed this issue on 9/26/14" (Doc. 41-1, p. 3).

Defendant Burcham does not dispute that Castaneda submitted these grievances, but instead argues that the grievances do not contain sufficient factual information against her specifically. Burcham points to the fact that IDOC regulations require inmate grievances to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810. However, the grievance forms

4

used by Castaneda only state that he is required to provide a "brief summary" of the problem at issue. The instructions on the grievance form do not mirror the requirements set forth in the IDOC regulations. The Seventh Circuit confronted this same issue in *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) and held that the prisoner plaintiff (coincidentally, also a former Lawrence inmate) was not required to provide the level of specificity demanded by the regulations because the grievance form only required a "brief summary."

Here, Castaneda's grievances provide a brief summary of his issues, specifically that he is dissatisfied with his medical treatment at the Lawrence Health Care Unit. He discusses the incidents that occurred in mid-2013 and the Flomax issue in early 2014. Furthermore, Castaneda states that Lawrence nurses typically do not wear name tags and that he has had a difficult time identifying those who provided him medical treatment.2 In sum, Castaneda provided prison officials with a brief summary of his concerns and an opportunity to address his complaint. That is all that was required. As the Supreme Court recognized in *Jones v. Bock*, "the [prison] grievance is not a summons and complaint that initiates adversarial litigation." 549 U.S. 199, 219, 127 S. Ct. 910, 923, 166 L. Ed. 2d 798 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

One other issue warrants mentioning. The delays Castaneda experienced in waiting to receive grievance responses calls into question whether the IDOC administrative remedies process at Lawrence may be deemed "available" at all. It's understandable that Castaneda may have had some questions or concerns after his two week hospitalization in May of 2013 and, as a result, filed a prison grievance. After Castaneda submitted the July 28, 2013 grievance to his counselor, Castaneda waited four months to receive a response and then waited another five

---

2 It should also be noted that the IDOC primarily relies on handwritten medical records and the signatures of the medical providers are often illegible. (*See, e.g.*, Plaintiff's medical records attached at Doc. 41).

5

months to receive a response from the Lawrence grievance office. After submitting the February 6, 2014 grievance because he experienced another allergic reaction, Castaneda waited almost six months for his counselor to respond and waited another four months to receive a response from the Lawrence grievance office.

The IDOC regulations suggest that submitting and reviewing grievances is a relatively speedy process. The regulations state that inmates must first attempt to resolve issues informally with their counselors and that grievance officers are required to review grievances weekly. Moreover, prison wardens are required to issue a decision within two months after receipt to the grievance office, "where reasonably feasible under the circumstances." Ill. Admin. Code tit. 20, § 504.830. The regulations do not set hard deadlines in which the counselor or warden must respond, but it is clear that prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Based on the language used in the IDOC regulations, a prisoner might reasonably expect that he could complete the grievance process at the institutional level within three to four months, or sooner. Castaneda did of course receive responses to the two aforementioned grievances (although he mentions there were others that he did not), but the delays at the institutional level were so lengthy that the administrative remedies process can hardly be deemed "available." Circumstances may be different if inmates are given a grievance receipt, a status report if grievance responses are delayed or if prison officials are bound by hard deadlines. But that's not the case and IDOC inmates are left to play a guessing game as to whether their grievances are in the process of being reviewed, have been inadvertently lost or were deliberately destroyed.  Such a guessing game does not appear to be consistent with the spirit of the IDOC

regulations or Seventh Circuit guidance with respect to the realistic availability of the grievance process to inmates.

Defendant Burcham's motion for summary judgment is denied and, pursuant to *Pruitt v. Mote*, 503 F.3d 647, 656 (7th Cir. 2007), Magistrate Judge Daly is directed to reconsider Castaneda's motion for recruitment of counsel (Doc. 3).

**IT IS SO ORDERED.**

**DATED:  December 2, 2016**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**