# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISAIAS CASTANEDA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 15-CV-1414-SMY-RJD |
| MARC HODGE, MARK STORM, and ELAINE BURCHAM (f/k/a Elaine Hardy), | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

### Procedural Background

Plaintiff Isaias Castaneda, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Following threshold review, Castaneda proceeds on a claim of deliberate indifference against Nurse Practitioner Elaine Burcham (née Hardy), Warden Marc Hodge, and Assistant Warden of Operations Mark Storm. He alleges that Burcham prescribed a medication that caused him to suffer a severe allergic reaction, necessitating the removal of his gallbladder and resulting in the development of a hernia. Castaneda further alleges that Burcham, Hodge, and Storm failed to ensure that he received adequate medical attention for his hernia.

This matter is now before the Court on Motions for Summary Judgment filed by Defendant Burcham (Doc. 80) and Defendants Storm and Hodge (Doc. 82). Plaintiff has

responded to the Motions (Docs. 84-89). For the following reasons, Defendants' Motions are **GRANTED**.

## Factual Background[1]

Castaneda was transferred to Lawrence on March 6, 2013 (Deposition of Isaias Castaneda, Doc. 81-2, p. 28; *see* March 6, 2013 Transfer Summary, Doc. 81-1, p. 4). In his Transfer Summary, it was noted that Castaneda suffered from chronic Prostatitis[2] and was currently taking Hytrin to address this condition (*Id.*). No known allergies were noted (*Id.*).

On March 29, 2013, soon after his transfer to Lawrence, Castaneda was examined by Defendant Nurse Burcham (Doc. 81-2 at 7; Doc. 81-1 at 5). During the examination, Castaneda indicated that he was experiencing hesitancy and other issues with his urinary stream (*Id.*). Burcham prescribed Hytrin to address Castenada's prostate condition, and Bactrim, an antibiotic, to address the potential for infection arising from his urination issues (Declaration of Elaine Burcham, Doc. 81-3, ¶¶ 11-12). Prior to prescribing these medications, Burcham confirmed that Castaneda had no known drug allergies (*Id.* at ¶ 13; Doc. 81-2 at 3-4).

On April 30, 2013, after taking Bactrim for some time, Castaneda complained to a nurse during "medline" rounds of emesis (vomiting) and "feeling warm" (Doc. 81-2 at 10; Doc. 89-1 at 2). He also complained of a red rash on his arms, chest, groin, back, buttocks, and legs (*Id.*). The nurse provided Castaneda with an "e-pass" to the healthcare unit for the following day (*Id.*).

The following morning, Castaneda was taken to the healthcare unit and was examined by Nurse Brooks (Doc. 81-3 at ¶ 19; Doc. 81-1 at 6). He told Brooks that his rash developed the previous day and she noted that it was located on his chest, trunk, and back (Doc. 81-3 at ¶ 21;

---

[1] The following facts are undisputed unless otherwise indicated.
[2] Prostatitis is swelling and inflammation of the prostate gland that often causes painful or difficult urination. MAYO CLINIC, *Prostatitis*, https://www.mayoclinic.org/diseases-conditions/prostatitis/symptoms-causes/syc-20355766.

Doc. 81-1 at 6). Brooks checked Castaneda's vital signs, which were all within normal limits, including a temperature of 97 degrees (Doc. 81-3 at ¶ 23; Doc. 81-1 at 6).

Approximately ten minutes after Brooks' examination, Defendant Burcham also examined Castaneda (Doc. 81-2 at 12; Doc. 81-1 at 7). She reviewed the nursing note prepared by Brooks (Doc. 81-3 at ¶¶ 20-24). Burcham identified hives located on Castaneda's torso and his bilateral lower extremities (Doc. 81-3 at ¶ 26; Doc. 81-1 at 7). Burcham attests that Castaneda did not complain of fevers, yellow eyes, jaundice, nausea, vomiting, diarrhea, or other symptoms aside from hives (Doc. 81-3 at ¶ 28). Castaneda, however, claims that he told Burcham he was having fevers and throwing up (Doc. 81-2 at 13). He also testified that Burcham believed he was suffering from a soap allergy (*Id.*). Burcham administered, and prescribed, Benadryl for Castaneda to address his hives, and planned for him to follow-up in one week (Doc. 81-2 at 13; Doc. 81-3 at ¶¶ 35-36; Doc. 81-1 at 7). She then sent Castaneda back to his cell (Doc. 81-2 at 14).

Castaneda's condition worsened over the next few days and, on May 5, 2013, he was taken to the healthcare unit after fainting in his cell (Doc. 81-2 at 14). On May 6, 2013, Dr. John Coe issued an order to have Plaintiff referred to an outside facility on an emergency basis for evaluation (*Id.*; Doc. 81-1 at 12). From May 6, 2013 to May 22, 2013, Castaneda received treatment at Lawrence County Memorial Hospital, Carle Foundation Hospital, and Memorial Medical Center for Stevens-Johnson Syndrome[3], to treat his acute cholecystitis (gall bladder infection), and to undergo a cholecystectomy (a procedure to remove his gall bladder) (Doc. 81-2 at 15-16, 20; Doc. 89-6 at 1). He was told that he suffered from a severe allergic reaction to sulfa (a component in the Bactrim he was prescribed on March 29, 2013) (Doc. 81-2 at 19).

---

[3] A severe skin reaction most often triggered by particular medications. NATIONAL INSTITUTES OF HEALTH, *Stevens-Johnson Syndrome/Toxic Epidermal Necrolysis*, https://ghr.nlm.nih.gov/condition/stevens-johnson-syndrome-toxic-epidermal-necrolysis.

On June 20, 2013, after his return to Lawrence, Castaneda first sought treatment for a hernia that he believes arose as a complication to his drug reaction (Doc. 81-2 at 23-24; Doc. 86-1 at 7). Dr. Coe saw him on several occasions to examine his hernia and indicated that because the hernia was in the development stage, it would be treated with pain medication and stool softeners (Doc. 81-2 at 24).

In July 2013, Castaneda wrote a letter to a warden (it is not clear if this letter was sent to Storm or Hodge) complaining about his hernia treatment (*Id.* at 31). He met with Hodge on the warden call line on October 11, 2013, to discuss his hernia and the doctor's denial of his request for surgery (*Id.*; Doc. 83-1). Hodge advised the Medical Director, Phil Martin, to review Castaneda's medical records, and placed Castaneda on Martin's next call line (*Id.*; Doc. 83-2 at 7). Castaneda was examined by Dr. Martin on October 15, 2013, but was again denied surgery for his hernia (*Id.*). He again spoke to a warden about his hernia issues in December 2013 (Doc. 81-2 at 33-34).

In January 2014, Castaneda was prescribed Flomax, another medication that contains sulfa (*Id.* at 20; Doc. 81-1 at 17). After Castaneda began experiencing symptoms of his sulfa allergy, he advised a nurse of his complaints and the medication was discontinued (Doc. 81-2 at 21). Following this incident, Castaneda submitted an emergency grievance to Hodge, complaining that he had been given a medication that he was allergic to and indicating that he also suffers from a hernia that was caused by Burcham's previous prescription of Bactrim (Doc. 83-7). Hodge denied the emergency nature of the grievance and Castaneda submitted it to his counselor for review (*Id.*).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the district Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first element, the following circumstances constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Here, Defendants do not dispute the fact that the medical conditions at issue meet the objective requirement of a "serious medical need" as defined above. The issue is whether Defendants acted with deliberate indifference to Castaneda's serious medical needs.

**Elaine Burcham**

Burcham saw Castaneda on two occasions relevant to the claims in this lawsuit. Castaneda concedes that Burcham provided adequate treatment during her first examination on March 29, 2013, because neither Castaneda nor Burcham knew of his allergy to sulfa at the time. However, Castaneda contends that Burcham failed to fully evaluate his medical condition on May 1, 2013, and sent him back to his cell while he was suffering an allergic reaction, in contravention of IDOC policy.

The evidence, when viewed in Castaneda's favor, establishes that Burcham evaluated Castaneda on May 1, 2013, approximately one month after she prescribed him Hytrin and Bactrim. Castaneda presented with a red rash and complaints of fevers and vomiting. Burcham prescribed Benadryl to address the rash and planned for Castaneda to follow-up in one week. Before the planned follow-up could occur, Castaneda's condition significantly worsened and he was taken to outside facilities where his gallbladder was removed and he was treated for Stevens-Johnson Syndrome, apparently caused by a severe allergy to Bactrim.

Although it is apparent Castaneda suffered from a severe allergic reaction and related medical conditions, the facts in the record do not demonstrate that Burcham acted with deliberate indifference on May 1, 2013. Deliberate indifference may be inferred based on a medical professional's erroneous treatment decision only when the decision is such a substantial departure from accepted professional standards or practices that it calls into question whether the professional actually exercised her professional judgment. *Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (citation omitted). Here, Burcham's failure to determine that Castaneda was suffering from a negative drug reaction on that date does not call into question whether she actually exercised her professional judgment in treating Castaneda. In fact, she took "reasonable

measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). She examined Castaneda, found that his vital signs were all normal, and prescribed Benadryl to treat his complaints. She planned to see Castaneda in one week to follow-up. Significantly, Castaneda testified that the onset of his symptoms was just one day prior to seeing Burcham and, after seeing her, it "progressed fast" and went "all downward" (Doc. 81-2 at 14).

On these facts, no jury could reasonably conclude that Nurse Burcham acted with deliberate indifference in treating Castaneda on May 1, 2013. In so finding, the Court also rejects Castaneda's argument that Burcham was deliberately indifferent by providing insufficient medical care that lead to his hernia.

The Court also finds Castaneda's argument that Burcham was deliberately indifferent in documenting his sulfa allergy to be unavailing. Although it is undisputed that Castaneda was prescribed Flomax in January 2014, Burcham did not prescribe the medication and the record is devoid of any indication that Burcham was responsible for any inaccuracies in documenting Castaneda's sulfa allergy. For these reasons, Defendant Elaine Burcham's Motion for Summary Judgment is granted.

## Mark Storm

Castaneda argues that Defendant Storm deliberately disregarded a serious risk to his health in failing to address his pleas for hernia surgery and to ensure his sulfa allergy was properly documented in his medical file. Storm maintains that he was not deliberately indifferent to Castaneda's medical needs as he was not directly involved in his medical care. The Court agrees.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations

measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). She examined Castaneda, found that his vital signs were all normal, and prescribed Benadryl to treat his complaints. She planned to see Castaneda in one week to follow-up. Significantly, Castaneda testified that the onset of his symptoms was just one day prior to seeing Burcham and, after seeing her, it "progressed fast" and went "all downward" (Doc. 81-2 at 14).

On these facts, no jury could reasonably conclude that Nurse Burcham acted with deliberate indifference in treating Castaneda on May 1, 2013. In so finding, the Court also rejects Castaneda's argument that Burcham was deliberately indifferent by providing insufficient medical care that lead to his hernia.

The Court also finds Castaneda's argument that Burcham was deliberately indifferent in documenting his sulfa allergy to be unavailing. Although it is undisputed that Castaneda was prescribed Flomax in January 2014, Burcham did not prescribe the medication and the record is devoid of any indication that Burcham was responsible for any inaccuracies in documenting Castaneda's sulfa allergy. For these reasons, Defendant Elaine Burcham's Motion for Summary Judgment is granted.

## Mark Storm

Castaneda argues that Defendant Storm deliberately disregarded a serious risk to his health in failing to address his pleas for hernia surgery and to ensure his sulfa allergy was properly documented in his medical file. Storm maintains that he was not deliberately indifferent to Castaneda's medical needs as he was not directly involved in his medical care. The Court agrees.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations

measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). She examined Castaneda, found that his vital signs were all normal, and prescribed Benadryl to treat his complaints. She planned to see Castaneda in one week to follow-up. Significantly, Castaneda testified that the onset of his symptoms was just one day prior to seeing Burcham and, after seeing her, it "progressed fast" and went "all downward" (Doc. 81-2 at 14).

On these facts, no jury could reasonably conclude that Nurse Burcham acted with deliberate indifference in treating Castaneda on May 1, 2013. In so finding, the Court also rejects Castaneda's argument that Burcham was deliberately indifferent by providing insufficient medical care that lead to his hernia.

The Court also finds Castaneda's argument that Burcham was deliberately indifferent in documenting his sulfa allergy to be unavailing. Although it is undisputed that Castaneda was prescribed Flomax in January 2014, Burcham did not prescribe the medication and the record is devoid of any indication that Burcham was responsible for any inaccuracies in documenting Castaneda's sulfa allergy. For these reasons, Defendant Elaine Burcham's Motion for Summary Judgment is granted.

## Mark Storm

Castaneda argues that Defendant Storm deliberately disregarded a serious risk to his health in failing to address his pleas for hernia surgery and to ensure his sulfa allergy was properly documented in his medical file. Storm maintains that he was not deliberately indifferent to Castaneda's medical needs as he was not directly involved in his medical care. The Court agrees.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations

omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Here, the record fails to demonstrate that Storm was ever notified of Castaneda's complaints concerning his medical care. Castaneda's claim against Storm relies entirely on a letter submitted to the Administrative Review Board in which Castaneda indicates that he spoke with Storm concerning an August 27, 2013 grievance. Beyond the clear admissibility issues, this letter alone is insufficient to establish that Storm knew Castaneda was at excessive risk to his health or safety and failed to act. Accordingly, Defendant Mark Storm's Motion for Summary Judgment is granted.

## Marc Hodge

Castaneda contends that Hodge deliberately disregarded a serious risk to his health by failing to address his pleas for hernia surgery and failing to ensure that his sulfa allergy was properly documented in his medical file. As is true with respect to Defendant Storm, Hodge points out that he was not directly involved in Castaneda's medical care. But there some evidence that Castaneda complained to Hodge about the provision of Flomax and the treatment for his hernia.

While it is well settled that a government official is only liable for his or her own misconduct under § 1983, once an official is alerted to an excessive risk to inmate safety or health, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). As such, the mere fact that Hodge did not provide or direct Castaneda's medical care does not absolve him of any possibility of liability for the same.

The evidence in the record establishes that Castaneda complained about his hernia treatment to Hodge during an in-person meeting on October 11, 2013. Hodge also received one emergency grievance dated February 6, 2014, wherein Castaneda complained that he was provided Flomax, in contravention of his known sulfa allergy. That said, the Court finds as a matter of law that Hodge adequately addressed Castaneda's October 11, 2013 complaints by ensuring that Castaneda was seen by Dr. Martin on October 15, 2013. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care).

Further, Hodge's handling of Castaneda's February 6, 2014 grievance does not create a material issue of dispute for the jury's consideration. Although a prison official may be held liable under § 1983 for failing to respond to violations of an inmate's constitutional rights that come to his attention via the grievance process, *see Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996), merely ruling against an inmate on a grievance does not impute liability to a prison official. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). It is apparent that Hodge did not ignore Castaneda's grievance; indeed, the evidence establishes that Hodge quickly reviewed the grievance once it was received by his office and, after determining that it was not emergent, directed Castaneda to submit it in the normal manner. Moreover, as Castaneda was no longer taking Flomax at the time he submitted his grievance, any failure by Hodge to impose discipline or to properly investigate Castaneda's claims after the fact does not amount to a constitutional violation. *See Vukadinovich v. McCarthy,* 901 F.2d 1439, 1444 (7th Cir. 1990). Accordingly, Defendant Marc Hodge's Motion for Summary Judgment is granted.

**Conclusion**

For the foregoing reasons, the Motions for Summary Judgment filed by Defendant Elaine Burcham (Doc. 80) and Defendants Mark Storm and Marc Hodge (Doc. 82) are **GRANTED**. This case is **DISMISSED WITH PREJUDICE** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 2, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**